**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES LAM, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-01058-JAR |
| | ) |
| DET. SGT. RALPH E. FINN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Ralph E. Finn, Jack Allen, Greg Palovick, and Joshua Lovern's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ready for disposition. For the following reasons, defendants' motion to dismiss is denied.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may assert as a defense the plaintiff's "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019).

The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir.

2017). However, "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff has presented "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

When evaluating whether a self-represented plaintiff has asserted sufficient facts to state a claim, a pro se complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "[I]f the essence of an allegation is discernible...then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

## The Complaint

Plaintiff brings this § 1983 action against three officers of the Sullivan Police Department alleging Fourth Amendment violations arising out of his arrest and detention for a crime he did not commit. Plaintiff states that on January 21, 2016, an individual impersonating him entered the Peoples Bank in Sullivan, Missouri. The unknown man opened a checking account in plaintiff's name, fraudulently cashed checks in plaintiff's name, and used the proceeds to make purchases at a cellular store. The man then went to the Factory Connection store in Sullivan, Missouri and attempted to buy more than $400 of merchandise using the fraudulent checks and a stolen credit card. The transaction was declined, and an employee at the Factory Connection contacted the Sullivan Police Department.

-2-

Plaintiff states that Detective Sergeant Ralph E. Finn and Officer Greg Palovick of the Sullivan Police Department arrived at the Factory Connection and arrested the man impersonating plaintiff (the "Shoplifter"). They searched the Shoplifter's truck and found evidence that he was committing identity theft and passing bad checks. The officers searched the Shoplifter's wallet, but did not visually verify his picture identification. They then transported the Shoplifter to the Sullivan Police Department where Officers Allen, Joshua Lovern, Greg Palovick, and Ralph Finn booked and photographed him. They did not fingerprint him. Although the complaint does not explicitly state whose name the Shoplifter gave the officers, presumably he falsely gave the name of plaintiff James Lam III. After 75 minutes, the Sullivan Police Department released the Shoplifter.

Plaintiff states that Officers Finn and Palovick investigated the case. They spoke to witnesses at both stores, and had store employees sign affidavits. On February 5, 2016, Officer Finn signed a probable cause statement alleging he had probable cause to believe plaintiff James Lam III committed one or more criminal offenses arising out of the theft and attempted theft on January 21, 2016. *See* ECF No. 8 at 18.

On October 26, 2016, prosecutors charged plaintiff with one count of misdemeanor theft of property less than $500. *See State v. Lam*, No. 16AB-CR02338 (Franklin Cty. Cir. Ct. filed Oct. 26, 2016) (ECF No. 8 at 15). Plaintiff states that between February 5, 2017 and October 4, 2018, he was arrested and incarcerated three times for a total of 56 days on this criminal charge. At some point investigators reviewed the mug shot of the Shoplifter taken January 21, 2016 and realized that the man in the mug shot was not James Lam III. The criminal proceeding was terminated by the prosecution on October 4, 2018.

-3-

Plaintiff states that a cursory investigation of the crime, a visual inspection of the Shoplifter's identification, a review of surveillance footage, or a glance at the mug shot would have revealed that plaintiff was not the individual committing the crimes. Rather, plaintiff was the victim of identity fraud. He states that as a direct result of defendants' actions "it caused me to become homeless for over two years during the Covid pandemic, these events caused me to have a nervous breakdown. Recently I've received mental help and am prescribed antipsychotic medication to deal with my severe mental anguish." ECF No. 8 at 23.

For relief, plaintiff seeks $156,000 in compensatory damages and nearly $3.3 million in punitive damages.

## Discussion

### A.    Statute of Limitations

Defendants move to dismiss plaintiff's complaint stating that his claims are barred by the five-year statute of limitations for bringing a § 1983 suit. Plaintiff alleges he was falsely arrested three times between February 5, 2017 and October 4, 2018 and was unlawfully detained for a total of fifty-six days. Defendants argue that the five-year statute of limitations for bringing a §1983 claim started when plaintiff was detained pursuant to legal process, which they state was October 26, 2016, the date the prosecutor filed the criminal information. Because plaintiff has not alleged he was detained pursuant to different legal processes, but only one legal process, defendants state the statute of limitations began to run on October 26, 2016. Plaintiff filed this case on October 3, 2022, which defendants contend is nearly a year late.

Federal law dictates when a § 1983 cause of action accrues. A claim for false imprisonment accrues when the plaintiff is detained "pursuant to legal process." *Martin v. Julian*, 18 F.4th 580,

-4-

583 (8th Cir. 2021) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Although defendants assert the only legal process at issue was the filing of the criminal information on October 26, 2016, this has not been established. First, plaintiff was not *detained* pursuant to legal process until his arrest, which occurred February 5, 2017. Additionally, the Court has no information regarding why plaintiff was arrested two more times for the same offense. Even assuming all three arrests occurred pursuant to the same legal process, plaintiff was detained three separate times. It is the detention pursuant to legal process that begins the running of the statute of limitations. Because the Court has no information regarding why plaintiff was arrested three times for one offense, no information regarding the legal process under which he was detained the second and third time, and no information regarding the dates of his second and third detentions, the Court cannot determine the accrual date for the statute of limitations.

Defendants have not met their burden of showing the statute of limitations bars plaintiff's action. *See Lackawanna Chapter of Rwy. & Locomotive Historical Soc., Inc. v. St. Louis County, Mo.*, 606 F.3d 886 (8th Cir. 2010). For this reason, the Court will deny their motion to dismiss based on this ground.

B.    Qualified Immunity

Plaintiff alleges officers violated his Fourth Amendment rights by arresting him without probable cause. Defendants disagree, and in their motion to dismiss they argue that the court should grant the officers qualified immunity because plaintiff has not shown a lack of arguable probable cause for his arrests.

Police officers are "entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right;

and (2) the right was clearly established at the time of the deprivation." *Bell v. Neukirch*, 979 F.3d 594, 602 (8th Cir. 2020) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014)). "[P]robable cause may justify an officer's arrest of an otherwise innocent person when that person *reasonably* fits the description of the suspect." *Id.* at 603 (emphasis original) (quoting *Hill v. California*, 401 U.S. 797, 804 (1971)). However, "[w]here a seized person's characteristics differ this substantially from what reasonably would be expected from the suspect, an officer does not have probable cause for an arrest." *Id.* at 604.

The analysis of qualified immunity as to the officers must be made at two separate points, (1) the date they booked the Shoplifter at the Sullivan Police Department, and (2) the date they arrested plaintiff for the crime. With regard to the Shoplifter's booking, the Court does not have enough information to determine whether a reasonable officer would have realized the Shoplifter was using a false identification card. According to plaintiff, the booking officers recovered the Shoplifter's wallet from his back pocket, but did not visually verify that he matched his photo ID. Plaintiff does not state whether the ID the Shoplifter produced was the Shoplifter's, plaintiff's, or some falsified ID combining characteristics of both individuals. The Court has no information regarding whether the name on the ID card was plaintiff's or the Shoplifter's; whether the photograph on the ID card was of plaintiff or the Shoplifter; whether plaintiff and the Shoplifter look alike; whether officers verified the address and phone number of the Shoplifter; and whether the other identifying characteristics on the ID card matched plaintiff. This information is critical to making a determination of whether the booking officers are entitled to qualified immunity for misidentifying the Shoplifter as plaintiff. *See e.g.*, *Bell v. Neukirch*, 979 F.3d 594 (8th Cir. 2020) (denying qualified immunity to officers who arrested person whose height, hair style, clothing,

and shoes differed substantially from suspect); *Rodriguez v. Farrell*, 280 F.3d 1341, 1350-51 (11th

Cir. 2002) (granting qualified immunity to officers involved in executing a valid arrest warrant

against the wrong person, where plaintiff and suspect shared (1) similar birth dates, social security

numbers, addresses, birth places and tattoos and (2) the identical name, sex, race, and age); *Towns*

*v. Beseler*, 2016 WL 5933400, * (M.D. Fla. Oct. 12, 2016) (addressing several factors relevant to

determining qualified immunity where police misidentified a shoplifter based on stolen ID,

including validity of ID, accuracy of information on ID, similarities between shoplifter and

plaintiff, etc.).

  Additionally, the Court does not have enough information regarding the facts and

circumstances surrounding plaintiff's arrest to make a determination of qualified immunity. Based

upon the complaint, the facts sworn to by the officer in the probable cause statement were true as

to the Shoplifter. But because the Shoplifter produced a fake ID to the officers, presumably the

arrest warrant identified plaintiff as the individual to be arrested. Again, based on these facts alone,

the Court does not have nearly enough information to make a determination regarding qualified

immunity. The Court does not have the arrest warrant and does not know whether the warrant

correctly identifies the Shoplifter or plaintiff, that is, his age, height, weight, race, hair color, eye

color. Assuming the arrest warrant listed plaintiff's name but the Shoplifter's characteristics, the

Court does not know whether the Shoplifter and plaintiff look alike. Nor does the Court know what

steps the officers took to confirm the person named on the arrest warrant was the same person

previously booked for the crime.

  Because the Court has very little information regarding the facts and circumstances

surrounding the booking and release of the Shoplifter or the arrest of plaintiff for the Shoplifter's

crimes, and it cannot determine whether a reasonable officer could have believed the arrest of plaintiff was supported by probable cause. Discovery is necessary to determine what went wrong and how. Only then can the Court determine the facts and circumstances leading up to the arrest of plaintiff for a crime he did not commit. For this reason, the Court will deny defendants' motion to dismiss defendants based on qualified immunity as this time.

C.     Exhaustion of Administrative Remedies under PLRA

Finally, defendants assert that under the PLRA, plaintiff was required to exhaust his administrative remedies before filing suit. The PLRA's exhaustion requirement states that "[n]o action shall be brought *with respect to prison conditions* under section 1983 . . . by a prisoner confined in any jail, prison, or other such correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). If plaintiff's claims do not implicate "prison conditions," he need not exhaust the prison's administrative remedy process prior to filing suit. *Id.*

Plaintiff has not brought a prison conditions lawsuit. Rather, plaintiff challenges the constitutionality of his arrest and imprisonment. The Supreme Court has recognized two different types of prisoner litigation: (1) litigation challenging the fact or duration of confinement, and (2) those challenging the conditions of confinement. *See McCarthy v. Bronson*, 500 U.S. 136, 138 (1991) (interpreting 28 U.S.C. § 636). Plaintiff's case challenges the fact and duration of confinement, which does not require exhaustion under the PLRA. The Supreme Court has stated that Congress has made it clear that pre-incarceration claims fall outside the PLRA's exhaustion requirement, specifically mentioning that a § 1983 claim against an arresting officer would not be subject to the PLRA's exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 529 (2002) (holding

-8-

the PLRA's exhaustion requirement applies to inmate suits about prison life, both general circumstances or particular episodes, including excessive force and other wrongs).

Here, plaintiff's claims against the officers involve pre-incarceration actions and concern the fact and duration of plaintiff's confinement. Such claims are not "with respect to prison conditions" or "about prison life" and therefore do not require exhaustion under the PLRA. *Id.*

For these reasons, the Court will deny defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6) is **DENIED**. [ECF No. 16]

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 13th day of December, 2023.